Robust and clear precedent dictates the outcome here. In case after case, this Court has held that judges applying ACCA may find only what crime with what elements a defendant was previously convicted of, nothing more. And the Court has grounded that rule directly in the Sixth Amendment. A judge may not increase a defendant's sentencing range based on offense-related conduct that the prior jury did not need to find. ACCA's Occasions Clause, as this Court construed it in Wooden, requires exactly that kind of factual inquiry. The whole point of the clause, in fact, is to require something more than just three convictions before an ACCA sentence is imposed. As such, the Apprendi Rule directly applies to it. That leaves Amicus's objection that the Court should eschew that straightforward analysis because applying the Sixth Amendment here would somehow harm defendants. But as the briefs filed by criminal defense organizations show in this case, that concern is unfounded. Guilty pleas, waivers, and stipulations in all candor make the Occasions Clause not really an issue that's litigated in most cases. But in the rare cases, in fact, in the handful of cases a year where you're going to have a defendant who disputes the Occasions issue as well as the underlying Section 922G charge, bifurcation is a time-honored solution that courts have already shown that they can apply to resolve that situation and avoid any prejudice to the defendant. The Court should endorse that practice and reverse the Court of Appeals. I'm happy to take the Court's questions. Mr. Fisher, wouldn't it be more straightforward to overrule Almendar's forest? Obviously, that's one thing the Court could do if and when necessary. But do you think we should? I think the Court should someday, but I don't know the Court needs to do it in this case. I think that our position in this case is what the Court has already said in Mathis and Discant, makes perfectly clear that the Occasions Clause falls outside of Almendar's-Torres. And I think the reason we didn't brief the case that way is because the Court's ordinary practice is not to consider overruling a case unless you had to. But don't you have – it seems that you and the government can't agree where you draw the line, right? I think, Justice Thomas, we agree on a whole lot. So we agree that the test is whether or not the fact at issue is part of the prior conviction. And government uses the word integral to the prior conviction. We think inherent in the prior conviction. So we agree with the test. We do have some quibbles, perhaps, on the margins of how that test would apply. But, again, this case wouldn't present any of those issues. Well, Almendar's-Torres is an established precedent of a court that's been relied upon and reaffirmed in subsequent cases. So if we were to reexamine that, would it then be appropriate to reexamine the entire question that was opened up in Apprendi? Or would you just like us to open up the part that might yield a decision that's favorable to you? Well, I'm not even asking you to do that today. But if you did, I suppose fair is fair. You sort of took Justice Thomas' bait. I suppose fair would be fair, and the court could go back to first principles. And I think those first principles, as the court's opinions in Apprendi showed, would dictate the right to jury trial applies to all facts necessary to include- Well, that remains to be seen. When you say that we should say something favorable about bifurcation, do you mean we should just say that it's a discretionary determination for trial judges, or you want us to hint more than that? Well, I think, as I understand the argument on the other side, it's that you should not apply the Sixth Amendment here because it would prejudice defendants. And so there's a ready answer to that question, which is bifurcation. It's the time-honored solution Justice Thomas identified in his Apprendi concurrence and we show in the papers has been endorsed by the court in the past. I think the Spencer v. Texas case from the 60s was one in which the court, I think, gently endorsed bifurcation, and that was a state case. This is a federal case, and so I think the court, if it wanted to, could express a little more support for that. Frankly, I don't know what the argument would be against bifurcation. Justice Alito, as I said, there are only a handful of cases a year where this is even going to arise. There are fewer right now. There are fewer than 200 ACCA cases a year, and, of course, most of those are plea bargains. So there's only a handful of cases a year, and bifurcation occurs in things like criminal forfeiture. It occurs in all kinds of civil cases. And so just to move the fact-finding from the judge over to the jury, I don't think it's very much to ask. The broader argument on the other side by the amicus is that the historical practice is much more mixed and that there were a variety of practices in the 1800s and earlier 1900s on this question, and that recidivism question of whether a defendant committed prior offenses was not routinely put before juries, in part because it was related to punishment, and in part because it was perceived as different because it's harmful to defendants in most cases to have it paraded before the juries. So that historical practice, I think, because it's mixed, actually supports Almendarez-Torres and supports, arguably, the amicus says, and I want to get your response, the approach that they're suggesting here, and that De Camp and Mathis were statutory cases, not constitutional cases. Your response? Right. So I think the history question is an important one, and then I'll turn to De Camp and Mathis. Starting with the way you should answer it, the look at the history question, we think after Gaudin and Apprendi, the question would be whether amicus can show a uniform or near-uniform critical case. Why is that? I'm sorry to interrupt, but that's a key point. I think it's the burden usually to establish a constitutional right, because it's not in the text. The text, and therefore we have to look at what the understanding of that text was, and we look at historical practice. And it would seem to me to get something established in the Constitution, you would need to show more of a uniform historical practice, which I think some of the prior writings and commentary has assumed. But when you get into it, it's a more mixed picture, I think. So Justice Gaudin. So those are two different questions. No, I think there's a lot there, and we want to work through it. And I will say, to cut to the chase, I think whatever test you apply on the history and tradition, we're going to win. But I think what the test is, is perhaps an important question for the future. And if you look at Gaudin, that's a Sixth Amendment jury trial case, and what the court says is to carve out an exception from the general rule that the jury has to find all the elements. The government, in that case, or the other side, has to show an overwhelming history and tradition. And I think once Apprendi extended the Gaudin all-elements rule to any fact that increases a sentence and creates what the Apprendi court itself called the general rule, subject only to the exception of Almendarez-Torres, then to fall in that exception, I think you have to make the Gaudin type of judgment. As you well know, whether you call it the rule or the exception kind of loads the dice. But the established principle in some states from early on in our history was that these issues were not put before the jury. You can call it the exception or the rule. But recidivism was not put before the jury precisely because it's so harmful. Well, Justice Kavanaugh, let's just cut right to that then. I think Amicus has identified only four states where recidivism was put to the judge instead of the jury when it increases the sentence. Up until the 20th century. There weren't 50 then, so four out of whatever. Four out of, by the time, all the way into the 1920s, four states. And then I don't think that's enough to show any kind of meaningful history. And again, that's just on the Almendarez-Torres question, Justice Kavanaugh. As to the different occasions type question that you have in front of you in this case, there is a sum in total of zero states up until 1929 that required any sort of finding like this that was allowed to be made by a judge instead of a jury. So what Amicus has done is cobbled together four states that would just cut against overruling Almendarez-Torres. And then a handful of other states with a few other kinds of findings here and there that are not offense-related conduct findings, which is what you have here. Amicus, I think the only other category of findings that Amicus is really able to put much together on is the date of a prior conviction for understanding that it's a prior conviction or a second conviction or that sort of thing. But again, that has to do with the inherent nature of the conviction. It's not anything to do with the offense-related conduct. And so that's what makes this an easy case, whether you do it under Descamps and Mathis, and I'll come to that in a minute because you asked me whether those are just statutory, but the rule in those cases or just first principles, history, and tradition, you land in the same spot. So let me turn to Descamps and Mathis then because you asked that as well. We think the court, to use the court's own words in Mathis, said what it meant in those cases, and the court was very clear that one of the three reasons why the categorical approach was construed the way and applied the way it was was because of the, quote, serious Sixth Amendment concerns that would arise. And the court, I think, even went a step further in Mathis and expressed an unambiguous rule in Sixth Amendment terms that any facts beyond the elements of the prior offense that are related to the conduct of that prior offense have to be made by the jury and cannot be made by the judge. And that's stated unequivocally in Sixth Amendment terms in the Mathis opinion. Mr. Fisher, can you maybe address what history and tradition are on your side? As Justice Kavanaugh's question said, I will be loading the dice if you say that it's amicus's burden to show the history and tradition. So can you talk about the history and tradition of fact-finding by the jury in cases of recidivism that supports your side? Yeah, so that's laid out quite thoroughly in our blue brief, that even when it came to the prior conviction itself, the overwhelming practice was for the jury to make those findings. And that's laid out quite thoroughly in our brief. I don't think there's a dispute that that was the common law rule. And any other fact that amicus identifies, the answer is the same. And, Justice Barrett, I think something else that's important to understand is that the occasions inquiry in this case arose from some 1960s reform movements about recidivism statutes. So there is no direct analog from history because this is an innovation of the 60s and beyond. And so it's really amicus that would depart from history by letting this fact be found by the judge instead of the jury. One other question. Do you agree with the government amicus that the harmless error analysis would apply? Yes, I think neither dictates that harmless error would apply in these cases. And so I think this case would be one of some pipeline cases that would be decided by lower courts on harmless error. Obviously, once you establish this rule, I don't think that's going to be much of an issue even going forward. Can I ask a question? No, please go ahead. Yes, I just wanted to know if there is a history and tradition of fact-finding by the jury with respect to recidivism, which I understood your answer to Justice Barrett to be that that's the case, what is the basis, then, for the Almendoris-Torres carve-out? Like, why do we have that? I think for two reasons, as I understand the Court's jurisprudence. One is, in Almendoris-Torres, the Court did talk about a tradition of judicial fact-finding when it came to prior convictions. The problem, I think, is that it's a more recent tradition. It's not the kind of tradition the Court typically looks to nowadays, but there was a recent tradition of judicial fact-finding. And secondly, the Court explained in Apprendi that at least when it comes to the fact of a prior conviction, which is to say the elements and nothing more, you have prior procedural protections in the form of a jury right in that prior adjudication that are different from any other fact like the one here. Thank you, Counsel. Justice Thomas? Justice Alito? I have a few questions about how trials would be conducted if you prevail here. So how would the government be able to go about proving that a series of offenses occurred on the same conviction? I assume they can introduce the judgment of conviction in all of those offenses, right? Yes. Can they introduce the charging documents, which would typically say on or about March 27, 2024, so-and-so broke into a house and burglarized it? I think the charging documents are harder, Justice Alito, because they might be hearsay or the like. I mean, they might – so if the truth of the matter asserted in those charging documents, I think the government might have a problem. But in most of these cases – sorry. But they are introduced for the truth of the fact that this is what the person was charged with. I think perhaps. That's something I've tried to research and just haven't found much law on. Something else I would add, though, is plea colloquies is going to be – obviously, most of these cases are pleas. Plea colloquies. And the defendants' own admissions in plea colloquies. They would be admissible. Yes. And jury instructions would be admissible. So if the jury is instructed on count one, you must find that on or about March 27, blah, blah, blah, that would be admissible? I think the jury instructions might be admissible. A court document? I think – and basically what I would tell the court is, you know, the federal rules of evidence have many provisions about official records and court records and prior testimony and the like. And so, you know, those rules and precedent are readily available to administrators. What about the question of how the jury would be instructed on the question of whether prior offenses occurred on the same occasion? That was a vexing issue in Wooden, and I think the court's opinion was well-crafted and nuanced. But I would be hard-pressed to reduce it to an instruction that would be easily intelligible to a jury. It's a multi-factor question. I think the jury instruction – Could you give us a model jury instruction on this, or do you have some idea how a jury could grapple with this question? I think those exist, Justice Alito, and they just mostly track the language in the court's opinion. So the question for the jury overall, of course, is whether these prior offenses were committed on different occasions, which, as the court put it in that case, turns on whether it was a single criminal episode or not. And then there are the factors – temporal proximity, geographic proximity, and the nature and relationship of the offense. I think it's similar to other kinds of qualitative elements that juries sometimes find. Mens rea can sometimes be highly qualitative. Materiality in a fraud case can be multi-factored in certain ways. That's not a multi-factor determination. Mens rea, you're asking the jury to determine what is in the defendant's mind. People make judgments about what is in the mind of other people all the time. That's a common experience. I can't think of something, Montana, maybe you can, that's quite as multi-dimensional and nuanced as this. Well, I think maybe one way to think about it, Justice Alito, is you have a top-line finding that needs to be made, which is different occasions or a single criminal episode. And then you have subsidiary facts that feed into that ultimate finding. And that's like most of the things I think we were just talking about, which is a top-line finding and then subsidiary facts, is just so you have an opinion in Wooden itself that kind of lays out those various facts. And so the jury could be instructed to consider those. So if the judge says a temporal factor, I don't want to dwell too much on this, but it will turn out to be important if you prevail. Temporal proximity is important. And so then the jury says, well, what does that mean? They had to occur on different days, different weeks. And what's the judge supposed to say? Well, that's up to you. I think that's right. And I think the judge would say, in that situation, something like the ultimate question you're asking is whether this is a single criminal episode or not, when you consider these three prior offenses. Yeah, so then they say, well, what is a criminal episode? How do you define a criminal episode? I think we're doing the Wooden argument again. I know. That's the problem. Well, I think an episode involves sort of a single coherent plan or experience or event. Like the whole RICO enterprise. That's a single criminal episode. I don't think so. I think there are limits temporally. But I don't think, as the court itself went back and forth at the oral argument in Wooden, I don't think it's necessarily a single day or a single place. I think the qualitative nature of a single episode allows for a little bit more than that. Thank you. Justice Sotomayor? Mr. Fisher, do you have the SG as suggesting, as you are, that we remand for the lower court to do the harmless error analysis, and that's what we generally do. Right. But amicai wants us to address it. Do you have a viable argument below? Oh, yes, we do. What's at issue in this case are three convictions over eight days allegedly in the same place, allegedly over eight days in the same place. Same city, not the same place. It wasn't the same. Yes, forgive me. That's what I meant to say. Yes, that's what's alleged. And so just as I was describing to Justice Alito, I think you could have a situation where imagine somebody had to pay a debt. And so to get money to pay that gambling debt, they conducted a string of burglaries over a few days of various commercial establishments. I think a rational jury could find that's a single criminal episode, especially against the backdrop of what ACCA is trying to accomplish with the different occasions clause. Remember, what they were trying to accomplish is identifying career offenders, people who have a long practice of offending. And so somebody who goes on a single bender or executes a single plan is not the kind of person that ACCA seems to be trying to identify. Thank you. Justice Kagan? There's been some talk in the briefs about the exact scope of the Almonduras-Torres exception. Do those questions get litigated or are they entirely academic? And does it matter the exact scope for this case? It doesn't matter the exact scope for this case because all the court has to do is apply the rule that's announced in this which is any offense-related conduct that goes beyond the elements is covered by Apprendi, not Almonduras-Torres. That's enough to decide this case. So, Justice Kagan, there are a few other facts. Candidly, there are not very many cases about them because there aren't very many recidivist statutes that deal with something like the date of the offense or other kinds of facts that are about. I'm not going to say never, but there is very little case law on it. And something like these other kinds of facts are, again, rarely going to be litigated because the defendant may not have any legitimate argument when it comes to these other kinds of facts. Justice Gorsuch, I just want to explore a little bit about what happens on remand. Not that we need to address it, but just to pick your brain for a minute. Our line between what is susceptible to harmless error review and what is structural error, I confess, sometimes defies me. On the one hand, it's structural error if you don't have a reasonable about instruction or if you've been denied your choice of counsel. On the other hand, it's susceptible to harmless error review if you didn't instruct the jury with respect to an element of the crime or if there's a variance. Here we have the plea bargaining context. We don't even have a trial record to analyze for harmless error review. So I'm a bit uncertain how one would do harmless error review other than look at the very records that you want to be able to challenge before a jury. You'd be taking judicial notice that he did it on such and such a date and he did this in a certain place. How does that work? How do you do harmless error review when you don't have a trial record? And let me add one more thing in there. A lot, I know. Here, your client pleaded to an information that listed as the ACCA predicate offense different crimes. So he didn't even have notice that the government was going to reach back to when he was 18 or thereabouts for this string of burglaries to enhance the sentence by 15 years. He's now in his mid-40s so that he won't get out of prison until he's in his maybe 60 or so. And how do we analyze, oh, it was harmless that he didn't even know what he was pleading guilty to? I think you're right. There are challenges. Even with conducting a neater type harmless error analysis after a jury verdict, Justice Scalia pointed out in dissent in that case, that becomes a very difficult speculative enterprise. Of course, the majority of the court disagreed. And the court has also disagreed when it comes to indictments. So I don't want to butt myself up too hard against the court's precedent, but I do think you make a good point that when it comes to cases where you have plea bargains, the question whether a jury might have found something or not, requires a very unusual showing on the government's part that it's absolutely so clear based on the kind of documents that we all agree a court can look at, under the Almendarez-Torres exception itself. So you're going to have some cases where the dates of conviction are so far apart or other things like that that I think are going to be harmless, but I think that just bolsters my answer to Justice Sotomayor as to why we have a not harmless error argument on remand. Justice Kavanaugh? On both Justice Alito's questions about instructions and Justice Gorsuch's question there, Wooden said courts have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart or a significant distance. That's still good law, correct? Of course. Nearly always, I think, is the phrase there. Okay. Then second question, Discamp and Mathis obviously didn't affect the states' criminal justice systems. Our holding here will cause states to have to revamp their recidivism practices, so that strikes me as something we didn't even contemplate in Mathis and Discamp's. You're saying I think they're fueled by constitutional concerns, but they didn't actually, Amicus makes this point, address the constitutional question, correct? Well, I think they did address the constitutional question. I grant you they also grounded the case in statutory analysis. But as to the effect on the states, there are a handful of states only that have anything like a different occasions kind of finding. Obviously, if you overruled Almendarez-Torres, that would have a bigger effect on the states. But you have only a small handful of states that have a finding anything like this, Justice Kavanaugh. And that's, I would just submit, quite small potatoes compared to what the court has done in other Apprendi cases, you know, and required the states to do in reaction. And I think it's probably telling that you don't even have a states' Amicus brief in this case, and it's because it would be so easy for states to just engraft the jury procedure onto the existing structures you already have. And last question, what about the concern raised by Judge Bibas in his article that Amicus cites, that because of the prevalence of plea bargaining that goes on, that having this as an element of defense will actually be problematic for criminal defendants? I know you have the Amicus briefs on the other side, but I just want you, since it's raised by Amicus here, to respond to that. Right. I think the NAFD brief actually deals with the plea bargaining dynamics that follow from the holding in our favor here. And they're actually good, because the problem with felon in possession cases, where ACCA is a kicker on the back end, is that there's nothing to plead to, because before Wood in hopefully this case, you know, the probation officer could just tell the judge, you have to increase the sentence, the defendant had no fair notice, and no way to defend, nothing to bargain with is what I mean to say. And so if you look at actually statistics, 14 percent of felon in possession cases go to trial. That's a very high number for the federal system. Here, if you were to say that the different occasions clause is an element, that then puts prosecutorial discretion in the government's hands and gives the defendant something to bargain with the government with, so you can have in the future defendants who plead guilty to the underlying 922G charge who would not have done so in the past in exchange for taking the ACCA enhancement off the table. And one last thing about that, remember at the time this case was litigated, the maximum punishment for 922G was 10 years. Now it's 15 years. So that actual change in law and the dynamics that would follow from a decision in our favor actually, you know, bolster the plea bargaining process. Thank you. Justice Barrett? Justice Jackson? So is there any distinction between your position and the SG's position? And if so, can you just zero in on it? There's no difference in this case. There's no difference as to what the rule that you should apply in this case is, which is any offense-related conduct beyond the elements of the crime are subject to Apprendi and not Almendarez-Torres. The only differences that I can discern in the briefing between our position and the SG are a few borderline in-between questions about how you apply that test to particular facts. So there's offense, the date of the offense I think is something the Solicitor General suggests might be within the prior conviction exception. We don't think it is because the date of the offense is not an element of the crime. It's not something a prior jury would have had to find. Does that suggest that the sort of future work of this court and other courts is going to be to have to identify which facts go to the judge and go to the jury? I mean, are we at that level? It seems at least the other side has a sort of simpler conception of this, which is recidivism, put it in the bucket of Almendarez-Torres. Well, it might be simpler to say any fact about a prior conviction, using a gun, vulnerable victim, whatever you could imagine would be called within recidivism. I just think that's so at odds with the court's Apprendi jurisprudence that that option is just not on the table as a matter of stare decisis. Let me ask you another question about that option, which is it seems very complex. This is going back to Justice Alito's line of questions. I totally understand your point. I understand the precedents. But we do have this Almendarez-Torres carved out. And part of this case is understanding its scope and whether or not this kind of thing should fit, does fit in it as a matter of precedent or should fit in it, given all of the various ways in which this could go. And one concern I have is that I think when we're talking about two different sets of facts with respect to the jury, there is like added complexity. What I mean by that is we have the facts that relate to the charged crime, today's charged crime. In this case, it's the 924G. But we also have facts that relate to past crimes that this defendant was convicted of committing. And I guess I'm just trying to understand how today's jury adjudicates past crime facts. So are they limited to the record that was presented to the original jury on those facts? Can new evidence come in related to crimes that happened 20 years ago as we try to figure out whether they happened on a single occasion? Or how does this work? So remember, if you bifurcate, the jury is not doing the two things at the same time. They're doing the 922G and then they're having a separate proceeding. In that separate proceeding, I do think other evidence could come in beyond the record that was established in the initial conviction. Because the way I think Congress drafted this was committed on separate occasions is an open-ended fact finding. So how do we keep this from being just like many retrials of the whole, are you saying we have to have the evidence? Remember, Justice Jackson, you're having that inquiry regardless. It's just whether or not the judge or the jury is going to make the finding. Now, if the jury is making the finding, the rule of evidence applies in ways it doesn't to the judge. But all the litigation is going to happen regardless. It's just who's making the fact finding. And I think you – I want to come back to your other question quickly. You asked about are we going to have these borderline Almendora-Torres cases coming back to you. I don't think that's necessarily the case. I won't say it's impossible, but this is my answer to Justice Kagan. There are very few states that have, or in the Federal Code, that have facts beyond the prior conviction itself that trigger enhancements, that are currently in the law found by judges. So I think it's very uncommon. And, of course, there will be further guidance, presumably in this opinion, for federal and state judges. So I think it's very unlikely you're going to see additional cases just because those laws are so uncommon. Thank you. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. As I think the colloquy so far this morning has demonstrated, as we see it, this case boils down to an unavoidable syllogism, which is that under Wooden, the different occasions finding under the ACCA requires a multifactored inquiry involving the timing, the proximity of location, and the character and relationship of prior offenses, whereas the Sixth Amendment prohibits, to use the words in Mathis, exploring the manner in which a prior conviction's offense occurred. And we therefore think that because a district judge is disempowered from doing it, the only option left is that the jury has to do it, and so we have acknowledged that a jury would need to do that. I'm happy to take the Court's questions, but I don't think the Court needs to, or frankly should, say much more than that to resolve this case. Well, wouldn't it be cleaner, though, to just simply overrule Almendarez-Torres? I had a suspicion you might ask me that question, Justice Thomas. And as you might anticipate, your suspicion might have been my answer is no. And the reason why is that we don't – maybe we think Almendarez-Torres is correct, but it's also a precedent this Court has adhered to for 25 years post-apprendi, always acknowledging this. Nobody's asked the Court to overrule it in this case. There's no need for the Court to overrule it in this case, and we therefore just leave it the way it is. To address some of the questioning from Justice Jackson and I think maybe Justice Kagan, we don't think very many Almendarez-Torres questions are really going to come up in practice. We do think that it means a bit more than I think my friend thinks it means, but our principal interest here is actually in the type of cases that are currently before the Court in the Brown and Jackson cases, which involve the comparison of state predicates to federal predicates and some timing questions that come up with those. And that situation's already covered by McNeil. It's clear that a Court can find what version of the statute was applied to the defendant at the time of the prior conviction. Do you want to say why you think Almendarez-Torres is correct? Well, Your Honor, I don't really want to turn this into relitigation of Almendarez-Torres, which again even Petitioner has not asked for, but we think the Court was correct. There are more states that I think support that than my friend would acknowledge. There's some clear precedent from Alabama, Louisiana, South Carolina, and Kansas. There are the superseding indictment statutes out of Virginia, West Virginia, Maine, and Massachusetts. And although some of those statutes allowed for jury trials on the back end, that was all historical evidence that was in front of the Court in Almendarez-Torres, and the Court found that, and this goes to some of your earlier questioning, Justice Kavanaugh, that there was at least enough non-uniformity on the issue to allow legislatures some wiggle room on this topic, which again Almendarez- Who do you think has the burden on the historical practice? Well, Your Honor, it's a little bit of a, do you want to see two faces or a vase? I think as we view it- We're going to need more than that. Yeah, I thought you might. I think as we view it, the Court made a move in Apprendi that, I think you're colloquy with Mr. Fisher illustrated, the Court made a move in Apprendi to extend the Sixth Amendment's treatment of things as an element to various features of criminal statutes that the legislature intended as sentencing factors. And I think we would take the view, viewing that as somewhat of an extension of what the Sixth Amendment literally demands, that there wouldn't be any burden on us to show unanimous or near-unanimous practice, so long as, as we think the history indicates, this was left to the legislature to describe, we think the legislature would retain that room today. But again, the Court doesn't need to get into any of this today. It is clear from the historical practice that there's really nothing like this. At most, the amicus marshals some decisions that show, beyond simply reaffirming the correctness of Almendarez-Torres, that show that district courts or trial courts could conduct some sort of sequencing determination, which we think a court can do because it can find the time of the prior offense, but at the very least can find the time of the prior conviction. And even those cases are relatively modern. Only South Carolina, so far as we can tell, under a 1955 statute and a 1972 decision, has allowed for litigation in front of a judge of the type of thing that the different occasions inquiry of ACCA might encompass. And we're talking about precise timing questions. So a court, we think, on its own, could determine that on or that a jury necessarily found that an event occurred on or about April 7th, for example. But the kind of timing questions that are involved under the ACCA's different occasions inquiry are going to be more fine-grained than that. You could have acts occurring across a single day that are separate occasions. Sells drugs in the morning, in the afternoon robs a store, in the evening comes home and beats his spouse. Like those would be three separate occasions, there's clearly a chance to have a break in between those. What about this one? This one, we think, is crystal clear. We think it should clearly be found harmless on remand. Not that we shouldn't do it? Your Honor, we're fine with you simply affirming on harmlessness grounds, if that's what the court chooses to do. The court's usual practice is to remand these things. We think we've got a crystal clear case in remand, and we will in most of these cases. It'll be a vanishingly small number where we don't. But here you have separate robberies that occurred on April 4th, April 8th, and April 11th. And would there be some value, if you think, I'm not saying I agree with you, but if we agreed with you that this was a crystal clear case, would there be some value to lower courts in saying this is the kind of thing that under Wooden would still be different occasions? Sure. I mean, we think that's already clear to some degree from Wooden, which I take to generally say that if you've got offenses spaced as far apart as these are, that it's almost invariably going to be the case that they are on separate occasions. But if the court wishes to explain that, that would be great for us. In particular, or great by us, for us as well. In particular, just to address the harmless error argument that Mr. Fisher posited a few minutes ago, we don't think simply I was in debt is enough to make things the same occasion. The kinds of circumstances where possibly a jury could, you know, we think, you know, it would be fair to find, obviously this always goes to the jury, but we think would really be realistically found to be the same occasion if they occur across the course of several days might be what the court posited in Wooden itself, like they're part of a common criminal scheme. So, for example, you burglarize a store to steal what you need to commit a kidnapping, you commit an assault during the course of the kidnapping, and later you murder the victim. It's possible that, you know, a jury could find that those were all the same occasion, even if it occurred over the course of a few days. So, Mr. Fagan, on that, first of all, I commend the government for acknowledging the error below in this case. That's an admirable step, candor. But on this harmless error question, let me ask you first, how is a court supposed to conduct that when there hasn't been a trial and in a world in which almost everybody pleads guilty these days, a really novel development during the course of our lifetimes. So, here the defendant was told that the three predicate ACCA crimes were different than these three crimes that you're now asking us for a court to say are clearly separate occasions and therefore harmless error. How is it harmless when he didn't know what the charges would be against him when he pled guilty? Well, Your Honor, I think... If you're going to drag back up convictions from when he was 18 that have nothing to do with his possession of a firearm today as a 40-something-year-old man... Well, Your Honor, first of all, I don't think he was under any assurances that he would not receive an ACCA sentence. In fact, he was... No, but in the information, the government specifically listed three other predicate offenses, not these. Well, Your Honor, to the extent that you're suggesting that the availability of an ACCA sentence might have informed his decision to plead, he was perfectly unnoticed that he could receive an ACCA sentence. It turns out that it's for three... I think only two of the crimes are different than the original ones because of intervening decisional law that made some of the original charged predicates no longer valid. To be clear, we don't think that in the indictment we actually need to charge what the specific predicates are. No, but you did in this information. We did in this information, but I don't think that, given that he has a fairly long rap sheet... No, I understand that. I don't... But do you think a defendant might make a reasonably different choice if he knows what the... and the ones you chose are different than the ones you're now seeking to pursue? Well, to be clear, Your Honor, we charged him, as I read the information, as... I mean, it put him on notice of the ACCA because it cited... You did. It put him on notice of the ACCA, but it was also in support of the basic underlying 922G offense. In addition, I think he is fairly charged with knowing his own prior conviction history. And then on that, in response to Justice Barrett, you admitted, I think, that there are some situations in which a jury could reasonably find that a series of crimes happened on the same occasion, even though they happened over the span of some days. At least in a jury trial, you've got all the facts before you. Here we have just the pleading documents from those prior cases. How is a judge... How are we supposed to have 100% confidence that it's harmless, that these were, in fact, on separate occasions when there's been no trial, and all we have before us are these pleading documents? Well, first of all, Your Honor, I don't think we look at it quite as that there has been no trial. It's that the entire record here would encompass the sentencing proceedings. This is the same error the court considered in Nieder, where an element was erroneously presented to a judge but not a jury. And here you have the record. We have the documents. But we don't know what the defendant would say. He might say it was all part, I did this crime to commit that crime to commit the third crime, just as you posited in response to Justice Barrett. We don't know what he would say with respect to whether these three crimes that you wound up using are part of a single occasion or different ones. Well, Your Honor, now that we've expanded the different occasions inquiry into a fundamentally factual one, that's the holding of Wooden, I think looking at what the defendant precisely did, it doesn't remotely support an argument of that sort. And also the idea that I would resist the idea that it's part of a common scheme or plan, simply just to undertake a string of robberies within a week. Like clearly he had the means to do the first one, to do the second one, and to do the third one. He had several days in between to cool off. He did not, and on the last day he robbed two stores, Druthers and Schnitzel Bank. If you want to look at the sentencing memorandum, the government sentencing memorandum at page six, those are fairly far apart from one another. I don't really think he has any viable argument, and I don't take debt, simply debt to be an argument, otherwise a gambling addict could constantly be on the same occasion. Seems probably right, but we have to decide whether it's harmless beyond a reasonable doubt. And we don't have anything from the defendant here with respect to his views about why this might be a single occasion. I'm just wondering how we're supposed to do that. Well, Your Honor, I think we do, because this issue was litigated before the judge, notwithstanding his objection. And I really don't think he has anything there. If he did, I think you would have heard it earlier this morning. Thank you, Mr. Bates. Thank you, counsel. Justice Thomas? Justice Alito? Well, I wanted to ask you some of the same questions I asked Mr. Fisher about how these cases will be tried if your view of the law prevails. So I asked him about the admissibility of the judgment of conviction, the charging document, jury instructions, plea, colloquy. Do you think all of that is admissible? Yes, Your Honor. I mean, there are, for example, in addition to the hearsay exceptions that might cover those, I think to the extent you're submitting documents that were just shown to the jury that are being used for the purpose of showing what the jury was instructed as opposed to for the truth of the matter asserted, there isn't a hearsay problem with those. Now, suppose the rule is what was said in Wooden was that judges have usually regarded things that are separated by more than a day as having occurred on separate occasions. I don't know whether you can instruct a jury about what judges previously did, but put that aside. Suppose there's a rule that says that in general, offenses that are separated by a day or more occur on different occasions. And suppose the documents that I mentioned don't nail down the exact day on which the offense occurred. So you have, let's say, the charging document for one says on or about March 27th. The other one says on or about March 30th. Is that sufficient to prove beyond a reasonable doubt that they occurred within a day? If it's not, then what are you going to do? Are you going to have to call the witnesses from those prior trials if they can be found and nail down the exact day on which this occurred? Well, to answer your first question, Your Honor, I do think the jury could, that would be enough to support a jury's inference beyond a reasonable doubt that they are on different occasions, particularly if there are other aspects of the crimes that are different. But number two, if we can't otherwise establish that, and again, this is an inquiry that judges used to undertake from the Shepard documents as to which they didn't really differ and were reaching, by and large, common sense conclusions. So it would be even easier for a jury to do that. Well, were they doing it beyond a reasonable doubt based on beyond a reasonable doubt standard? Yes, Your Honor. I think this is the kind of thing where the jury could infer that, for example, a robbery on or about March 28th and an assault on or about March 30th would be different occasions, particularly if there is really no contrary argument that connects them. And, you know, if necessary, and one reason we don't really think that Almandar's Torahs should be overruled as a practical matter is we don't really want to have to get the victims back into court to testify about what happened or the exact day on which it happened. But I don't take this to be a particularly complicated inquiry. It's a common sense one. Wooden expressly explained it as such. And we've had, due to the uniformity of the circuits against the position we're conceding now, very few actual jury trials. But we've had four of them, and it hasn't proven to really be a problem for us. Now, what about the question about differences in the nature of the offenses? So if the offenses are sufficiently different, that may support the conclusion that they were not part of, they were not committed on the same occasion, they're not part of the same scheme. What's the judge supposed to tell the jury about that? Suppose you have a case where the defendant committed a robbery in the morning on one day by grabbing a woman's purse and running away with it. Then in the evening, the defendant committed another mugging using a knife, and then the following morning went into some retail establishment and just grabbed $500 worth of merchandise and ran away. Are they sufficiently different? Yes, I think they are.  Well, Your Honor, I take separate occasions essentially where, to take this in a couple of pieces, it's clear, and the Court was explaining this in Wooden, that what Congress was trying to do was to address the situation in the Petty case out of the Eighth Circuit where the government and the Solicitor General confessed error, where essentially you got all the occasions out of one act. Where you have the three kinds of acts, even over a short span of time, such as you've described, Justice Alito, I think that's presumptively going to be separate occasions, not that you'd instruct the jury with such a presumption, but that it would be presumption in the sense that the jury would, I would expect the jury to find those to be separate occasions unless the defendant produced some substantial evidence to convince the jury otherwise. All right. Thank you. Justice Sotomayor? Justice Kagan? Did I hear you say to Justice Alito that you've had four of these types of trials? You did. What did those look like? What were they about? How did they go? Did you bifurcate? They were bifurcated trials, Your Honor. Would you always expect to bifurcate? I think unless there is some reason that we, frankly, haven't been able to anticipate as to why you wouldn't bifurcate, we generally agree to bifurcation, although I think, as Mr. Fisher said, in a lot of cases, the defendant's going to choose to plead to this or else just will enter into a stipulation and can handle it that way. And what did those trials look like? I mean, I think they looked like normal bifurcated proceedings where we proved the 922G offense, and then there was, after that, separate jury consideration of the enhancement where we introduced evidence about the prior crimes, had argument about the prior crimes, and those questions were submitted to the jury. I guess what I'm asking is there's been some talk about how difficult this is going to be for everybody. Was it? Well, let me say two things about that, Your Honor. I mean, one is this obviously was not our first-choice position. We have been arguing to the contrary for a long time. Our position in Wooden was largely informed by the fact that if it was a judge inquiry, that it needed to be a much simpler inquiry, and this is imposing some burden on us. But number two is that it's manageable, and we believe it will be manageable. Obviously, because of the uniformity of the circuits, it's a little bit hard to predict that. But ACCA cases are less than 1% of the federal criminal docket, and in those cases, with the availability of pleas, stipulations, and bifurcations, we are reasonably confident that we can manage this. Questions? Justice Kennedy? I have a few questions, sorry. On the facts here, this defendant had nine prior felonies over a 13-year period. Is that accurate? Your Honor, I couldn't, standing here, I don't remember the precise number, but he has more than the three that made up the ACCA termination. Your Honor, notice after even one, not to possess firearms, and he had 16 long guns and four other guns in his garage, correct? That's right, Your Honor. On the confession of error, I guess I thought of it a little differently than Justice Gorsuch did, because not one way or the other, but all the courts of appeals have rejected the confession of error, right, and ruled still for the government's original position. That's true, Your Honor, but we don't think that those holdings are viable. I mean, in some cases, they've just been waiting for this court to itself announce that the syllogism I mentioned at the beginning is correct, because the court expressly reserved the question and wouldn't. In some cases, we think they're just reading the Almendarez-Torres exception too far, and in other cases, they're talking about prejudice to the defendant, which, first of all, we think is itself a manageable problem, but also, as Mr. Fisher said, if you don't believe me, you can believe the defense bar, which is coming in on the petitioner's side here. Thank you. Justice Barrett? Mr. Fagan, just a quick clarifying question. When you were going back and forth with Justice Alito about how this would actually be done as a practical matter, he was asking about burden of proof, and I don't think you ever went back to it. I mean, in the old system, when judges were doing this, it was by preponderance, I assume? Correct. Interesting. So do you anticipate, which I took to be the thrust of some of Justice Alito's questions, that when juries are doing this beyond a reasonable doubt, do you think that the problems of proof would make it much more difficult to prove the predicates? I think that it may well do two things, and again, for reasons I've stated, this is kind of predictive. I do think it may incentivize defendants to submit this to a jury, whereas they might not have before, and I don't know that that's necessarily a particularly beneficial thing as a practical matter, because I think very rarely would it actually be the case that these were not the defendants' three prior offenses were not committed on separate occasions. And second, going before the jury, we might need to introduce different types of proof, or it may be harder to acquire everything that we might need. We'd prefer, as I said, not to have to bring the victim back in to say, yes, I can remember the date is stamped in my brain, October 26th, that's a day I'll never forget, because that's the day that that man robbed me, particularly if it's ten years in the past and memories may have faded. In fact, this kind of inquiry and much more overruling Almendarez-Torres would be a windfall for defendants who have a long rap sheet, as Mr. Erlinger does here, but who several of their crimes have been knocked out by various of this Court's or the Court of Appeals' decisions, and so we have to rely on some of the older crimes as to which it may be harder to produce this evidence or even to find every single state record that we might need where there would otherwise be no dispute about it because the defendant knows quite well that he actually committed those offenses and what they were about. One other question. So Justice Kagan asked you about the four trials the government has already conducted that were bifurcated. Same jury, or was it a different jury? I believe it was the same jury, Your Honor. I'm not certain, but I don't see any reason why you'd need to swear in an entirely new jury and say, hello, here's the defendant, here's what we've already determined. Sure, thanks. Justice Jackson? I just want to clarify one thing, because I've seen cases in which the indictment has many counts talking about different acts of the defendant and uses the kind of language that Judge Alito points to, on or about X date, and some of those counts even have overlapping dates and timeframes, and so I guess I would expect that it would be those kinds of cases in which the defendant would have a colorable argument that these things happened on the same occasion and those would be the ones that would be more likely to go to trial, right? I mean, I guess I'm suggesting that the trial scenario seems to me to be precisely the one where you would have to bring in all the evidence related to the past crime because if it was just as easy as, you know, these things are on separate dates, the person probably wouldn't go to trial, right? Well, Your Honor, I do think that, again, we don't have a ton of experience with this, but I do think that to the extent that the indictments for the prior crimes or the information for the prior crimes, the charging documents, show that they occurred on different days or at least allow a jury to infer as much, I'm not sure that the defendant, in the absence of some plausible argument, and again, I think that's going to be the rare case, and I take wooden to say it's the rare case, in the absence of a plausible argument that they're part of a common scheme, not just a common motivation like I'm an inveterate gambler and I need to rob stores to make my money, but an actual part of a common scheme, that the defendant's actually going to want to go to trial on that because, you know, among other things, like lots of cases plead, the defendant may not wish to kind of try the district court's patience with holding separate proceedings on something that's not going to benefit him. All right. Let me ask you another question that comes from a colloquy that you had with Justice Barrett about harmless errors. So any ruling that this court made, let's say we decided to address harmlessness in this context, you would anticipate that that rule would then be incorporated into jury instructions if these cases should happen in the future? It would depend what the court said, Your Honor. Our current proposed model jury instruction, which, again, we haven't really had to use very often because the courts of appeals haven't gone our favor, largely tracks what Mr. Fisher said earlier this morning. No, I know, but any future thing that courts say about harmlessness in a situation, right, if we look at the fact here and we say this is harmless because fill in the blank, that would then become a rule that I would assume would have to be incorporated into future jury instructions in order to make sure we have some sort of uniformity coming out of this, right? It would depend what the court said. I don't know that we would invariably, even under the current wooden decision as we have it, insist that the jury be instructed that, for example, different days almost always means separate occasions. I think we're comfortable enough with kind of a description of the general rule. We don't want defendants who basically got the same rap sheets coming out differently unless we have a rule about when it's going to be treated as a different occasion. That does bother us, Your Honor. We always want like defendants to be treated alike. That's a basic animating principle of the Sentencing Reform Act and sentencing in general. And to the extent we can, we would want jury instructions that would tend to reach that conclusion. However, as this court has noted, you know, for example, in United States v. Williams, like different juries even instructed the exact same way and come out different ways on similar facts. That's just the nature of the system. Thank you, counsel. Thank you. Mr. Harper. Thank you, Mr. Chief Justice, and may it please the Court. ACCA's Occasions Clause requires judges to make a classic recidivism determination, a finding about the separateness of prior offenses. Under this court's precedence, that legislative choice is consistent with the Constitution. This court held in Amandarres-Torres, based on centuries-old sentencing practices, that judges can impose sentencing enhancements based on recidivism. For decades, the federal courts of appeals have unanimously applied Amandarres-Torres to uphold judicial fact-finding under the Occasions Clause, and states also have relied on Amandarres-Torres to enact and enforce similar state recidivism schemes. Petitioners in the government seek to upend this practice, but they don't offer a principled basis for doing so. Their frontline position is that judges can find only the elements of prior offenses. But they concede that Amandarres-Torres authorizes judges to find various non-elemental facts as well. So they are forced to make exception after exception to their elements-only principle, and they ultimately land on standards that are inconsistent with one another and divorce from any constitutional principle or precedent of this court. I think what this court's precedence show is that judges can find facts about prior offenses under Amandarres-Torres, whereas juries must find facts about present offenses under Apprendi. But even if the other side's approaches were correct, the court should still affirm. Because at least the government agrees that judges applying OCCA's predicate felony clause can find facts about the dates and locations of prior offenses, and those very same facts are going to resolve most occasions' questions, as this case illustrates. It would make no sense to allow judges to find those facts under one clause of OCCA, but not the other. This court should not set aside decades of consensus and impose on all federal and state courts an untested recidivism regime that would gravely prejudice defendants. I welcome the court's questions. Counsel, what's your best historical evidence that judges have performed inquiries like the different occasions inquiry here? Sure, Justice Thomas. I want to flag up front that I don't think the right question is to ask whether there are sort of direct historical analogs, but to answer your question directly first, I do think that the statutes that Mr. Fagan mentioned about sequencing that go back to the early 1800s, finding that an offense occurred after a prior conviction, that an offense occurred after a defendant escaped or was released from prison, I think those are quite analogous to the occasions clause. I think at bottom, in most cases, the occasions clause is essentially asking judges to make a question about, to make a decision about sequencing, about how prior offenses occurred, whether they occurred one after another. And I do think these statutes that, again, go back to the early 1800s are quite similar in that regard. I do want to say, though, I don't think that that's the right historical question. I think the way the court should think about the historical inquiry here is to ask, at the time of the founding, was there a settled practice that legislatures had to treat recidivism as an element of the offense? And I think the answer to that question is no, as Almondara Soros recognized. Why doesn't bifurcation take care of all the problems from your perspective? So I think for a couple things, Your Honor. I think, first, bifurcation is extremely rare in criminal cases. I think the other side has cited only two contexts in which it occurs regularly. One is the death penalty context where it's required by statute. The other is the criminal forfeiture context where it's required by rule. And I think here it's going to be discretionary. And I don't think they've cited you a case or a context in which discretionary bifurcation happens as a matter of course. And I do think that because it's discretionary, the government is, I think, going to have good arguments against bifurcation in at least some cases. I would think, if I were the government, I would argue that the government has a right to present all of its evidence on all of the elements of the crime to a single jury so that that jury can make a moral judgment about whether this defendant has committed the crime as defined by Congress, and the defendant doesn't have the right to sort of hide an element from the jury on the first go-around and then show it to the jury in a bifurcated proceeding. And I think there already is some evidence of this. So we cite the Harrell case at page 46 of our brief. That's a case in which the government, the prosecutor, opposed bifurcation post-Wooden. The judge denied bifurcation. And then the defendant was forced to stipulate to the occasions question. And the jury was told this is a three-time convicted felon. And then the prosecutor at closing told the jury this is a drug-slinging, gun-toting, three-time convicted felon. And so I think that shows that when prosecutors decide they don't want to bifurcate, judges may well agree with that and that when they don't bifurcate, it's going to be seriously prejudicial to defendants. Well, of course, part of their answer is that this will be an incentive for the defendants to plead. So I think that's right, but I think that goes to my point, which is that this is prejudicial, whether it forces defendants to plead to worse deals or it forces them to go through non-bifurcated proceedings in which these prior convictions are paraded before the jury. There are a lot of occasions in which a defendant might love to have a bifurcated proceeding because jurors don't usually think like lawyers who are open to arguments in the alternative. So if the defense is going to be, I didn't do it, but if I did it, I didn't have the intent that is necessary under the statute, it might be really beneficial to have a trial first on the actus reus and then have a separate trial later on the mens rea. So I think there's no doubt that defendants are going to want to have bifurcated trials. I think the question is whether the government is going to want to. And Mr. Fagan said that at least federal government is going to be willing to do that in most cases, apparently not all cases, but most cases. But I don't think there's any guarantee that this is going to apply to the states. Whatever this court says in this case is going to apply to the states, too. And I don't think there's any guarantee that state prosecutors are going to feel the same way. In fact, I would think that this is going to be a pretty significant piece of leverage that prosecutors can use against defendants to say either plea to a worse deal or we're going to try to get this in front of the jury, and it's seriously prejudicial. Do you think it's the right historical question to ask whether there was an established precedent on the narrow question whether recidivism questions the question whether the defendant had committed other offenses in the past was recognized as an exception at the time of the adoption of the Sixth Amendment? Or would the broader question be more appropriate, which was whether it was well understood at the time of the adoption of the Sixth Amendment that judges could make discretionary sentencing decisions, which would take into account prior criminal convictions? And if it's the broader question, the historical evidence is extremely strong, as distinguished scholars have pointed out. At the time of the adoption of the Sixth Amendment, the first Congress, which sent the Sixth Amendment to the states, also adopted the first federal criminal proceedings and contrary to the suggestion in Apprendi, they didn't say if you commit burglary, you get five years in prison. No, they said if you commit such and such an offense, you shall be sentenced to no more than a certain sentence, which gave the trial judge discretion. So to be candid, Your Honor, I think there are two lines of history here. One is the history you just referenced, which is that judges have an enormous amount of discretion to change sentences within a sentencing range. The other is the Apprendi line of history, which is that, generally speaking, sentence-enhancing facts about present crimes were treated as elements that had to go to a jury. And so I think the relevant historical question is, was there a uniform understanding about sort of which box these recidivism-related facts fell into? And I think the answer is no. I think the answer is that there were at least eight states that we've identified going back to the early 1800s where legislatures had discretion to treat recidivism as an element of the offense or not, and that's because recidivism was different than facts about present crimes. It went to punishment only, not guilt, and putting those recidivism facts before a jury would seriously prejudice the defendant. When we start talking about history, I get very annoyed because in every history there are exceptions. The question then becomes, how many of an exception defeats the general rule? I'm not going to argue whether it was eight or four. I think it was four. And so I don't think that that defeats the general rule. That's the point. As to your earlier question on what prejudices a defendant or not, it's really only a defendant that has a viable single occasion argument who's ever going to think about raising it, because both with perjury enhancements to sentencing that judges possess, as well as annoying a judge enough so that a lighter sentence is unlikely because when the sentence comes about you're going to add the 15 years to a base that the judge can have from a low to a high. So it really is a question at the end, in my mind, of a viable argument about a single occasion or not.  And as others here have said, I don't know why we take your judgment as opposed to the judgment of the bar and every criminal defense bar. It is certainly a fair point, Your Honor, that the criminal defenders are on the other side. I think they've clearly made a judgment that this rule the petitioner and the government are urging is a net benefit for criminal defendants, and I don't think you should take my word over theirs on that. But I think my submission, though, is that I think it's indisputable that in some cases, like Your Honor said, the cases where this is a close question and the government refuses to bifurcate, I think it's going to prejudice defendants. I think that's what the Harrell case that we cited, page 46, shows. In some cases this is going to prejudice defendants, and I think that... Is it true of Apprendi generally? I mean, Apprendi was not justified on the basis of this is always going to help defendants. There are any number of elements that a particular defendant might prove and might decide in a particular set of circumstances he would rather argue to a judge. You know, it just doesn't seem to me that that's a reason for denying the force of Apprendi in this situation. So I agree that the same could be said as the prejudice point on Apprendi, but I think this is not just something that I'm making up. This is what courts have said going back hundreds of years as a reason to treat recidivism differently. And so I think Apprendi recognized the tradition as to present crimes. And Apprendi made that very clear at pages 488 and 496 of the opinion in distinguishing Almendarez-Torres. What the court said there was that Almendarez-Torres was about prior crimes. It was about issues that didn't go to the defendant's guilt. They went to punishment only. This tradition that we're recognizing here is about present crimes. And I think courts recognize that it was both the prejudice point and the fact that this was sort of a collateral issue. It was more like a sentencing issue. It was why there was a different tradition as to recidivism. So your point is it wasn't a historical accident necessarily. It was justified by a principle of not prejudicing defendants. That's right. And I think a good place to look for this is the Bishop Treatise, one of the leading criminal law treatise writers of the 19th century, said just that. He said that recidivism is treated differently because putting it before a jury is seriously prejudicial to defendants and because this is an issue that's more like a sentencing issue, which, as Justice Alito noted, has a tradition for hundreds of years of being not subject to Sixth Amendment. On Justice Sotomayor's question, because I think the methodological question, if we get deep into this, is pretty important here, how to think about all this. So start with the text. The text itself of the Constitution does not tell us the answer, just the bare words, correct? Correct. Okay. So then we usually look to history. We might not like it, but unless we're just making it up, I don't know where else we're going to look. And the question Mr. Fisher raised was, who has the burden on that? And I think I'd like you to speak to who has the burden. Do you have the burden to show a consistent uniform practice, or does he have the burden to show a consistent uniform practice going the other way in which recidivism always went to the jury? So I think that is the critical question, because if the government has the burden, then I see no way in which Almandara's Tories is correctly decided. But I think that the government in these cases does not have the burden, because I think as a default principle, when somebody is coming into this court or a court saying the Constitution violates or invalidates my sentence or invalidates a statute, typically it is upon that person to show that there is some well-established understanding that that's what the Constitution means. And sometimes when the text is clear, like in the Gowdean case that Mr. Fisher cited, then the burden flips to the government to show some historical practice that contradicts the text. But as Your Honor noted, the text here doesn't answer the question, and so we're looking to history. And I would say we're not looking to history directly interpreting the text of the Sixth Amendment. We're looking to state common law principles. And I think when the court is that far removed from something actually interpreting the Sixth Amendment, the court should demand a level of uniformity in those state common law principles before making the leap that the Constitution necessarily incorporated those common law principles. Is the right year to look at, 1791 or 1868? Obviously this is a federal case. So I think there's certainly academic debate about that. I think for purposes of this case, the time of the founding is obviously the most relevant time. And I guess what I would say is I think if anything what the history shows here is that there was an almost uniform practice that legislatures had discretion in this area. So it wasn't only the four states where judges were allowed to make findings about recidivism. It was also four states. We have Virginia, Massachusetts, and Maine, significant states between 1818 and 1824, enacting supplemental information statutes that allowed the government to withhold recidivism allegations from an indictment, despite that generally requiring all elements of an offense to be in an indictment. So we have at least eight. And then West Virginia added on a similar statute in 1868. So we have eight states. And then I think on the other side, the government and petitioner haven't cited a single case in any relevant time period where a court struck down a statute on the ground that it assigned recidivism findings to judges or allowed the government to withhold these allegations from the indictment. And so I think as far as I can see, there's an unrebutted tradition here of legislatures having discretion when it comes to recidivism. And I think there were good reasons for that as we discussed. Did all of those states? I mean, you know, the Sixth Amendment didn't apply to the states back then. So when you're saying, well, you can't point to a single one in which a court struck it down, were there state analogs to the Sixth Amendment that would be relevant? So I think states did have comparable jury trial rights and also states in which the supplemental information statutes were enacted. They had grand jury requirements that required all elements to be in an indictment. And these were challenged on constitutional grounds. And courts uniformly upheld them. This goes all the way back to 1824 in the Massachusetts Ross case that we cite in our brief, all the way through to this court's decision in Graham. There's no decision that I'm aware of to the contrary. So I do think there is a, even if it were our burden to show uniform tradition here, I think the uniform tradition was one of legislative discretion when it comes to recidivism. What about Matheson v. Camp? You know, it's through their statutory cases, but, you know, there is some avoidance language in them which you recognize in your brief. Do you want to talk about that a little bit? Sure. So the language in Matheson v. Camp, admittedly not great for my position here. I do think that the court... We appreciate your candor. I do think that the court just didn't resolve the constitutional question in those cases. They were, as you said, they were avoidance cases. I think most of what the court held in those cases was that there is a serious constitutional question about the scope of Almendares-Torres, and I think that's what this case is about. But I don't think that those cases resolved that question, and I don't think any other decision of this court has either. Can you turn to the theory for a second? You said in your opening that you find the other side's position to be unprincipled. So why is that? So for a few reasons. I think, first of all, their principle in this case, which I think Mr. Fisher reiterated in his opening, was that this elements-only principle, this principle that judges can only find facts that juries previously found beyond a reasonable doubt. And I just don't think that their theory, their test that they end up articulating, line up with that principle because they recognize that if the court were to double down on that elements-only principle, it would blow up the categorical approach because judges in doing predicate felony determinations often find facts that are not elements of prior offenses, like identity, like the date of the offense, like the sequencing issue in Almendares-Torres itself. So they articulate, they have to fall back from their elements-only principle, and they end up articulating standards, like the government standard, for example, facts encapsulated in judicial records that are components of prior convictions. I think that's what the government says. That test is in no decision of this court. I don't think it's in a decision of any court, as far as I can tell. And so I think because they are departing from their principle, they are articulating novel tests that really don't have any grounding in this court. And then the last thing I would say is that I think their test, at least the government's test, is not descriptively accurate, even because the test, facts encapsulated in judicial records, that identity is not encapsulated in judicial records. The date of the offense is not a component of the prior conviction. So I think the government's test, and I think Petitioner's test, too, although I'm a little less clear on what Petitioner's test actually is, I think none of them have a principle that actually explains where they end up landing. I mean, as I understand that argument, it's really just to say that Almendares-Torres and Apprendi are in a little bit of tension with each other. And who would deny that, really? I mean, even Apprendi understood that. But there's nothing about that bit of tension that has made the system fail to work. And, you know, why would we allow that bit of tension, which has existed for decades now, to suggest an answer to this question that does not seem the one that all our past precedents point to? So I guess I would say I don't think there needs to be tension between Apprendi and Almendares-Torres. I think certainly under the government and Petitioner's view, there is tension. But I think under my reading of Apprendi and Almendares-Torres is that they drew a pretty clear line between facts about prior crimes, facts about present crimes. I think, again, Apprendi said that multiple times. And so I think if you interpret it that way, the tension sort of resolves itself. And I think the fact that the courts have found non-elemental facts in doing the predicate felony inquiry suggests that that's really what the line is, is I think my fundamental point. On the tension, I think your point is that history has two different rules. That's right. And I think Almendares-Torres recognized that. And it's rooted in concern about prejudicing defendants. That's right. And I think in Apprendi itself, the court demanded a uniform standard as to sentence-enhancing facts about present crimes. And so I think it would be somewhat anomalous not to require an extension of that uniformity down to the different tradition of recidivism facts. And I think that's exactly what Almendares-Torres recognized, admittedly before Apprendi, but that there was no such uniform tradition in this different context. And so in this context, facts about present crimes, those don't need... There's no constitutional prescription there. Can I ask... Go ahead. No, please, go ahead. No, you can finish up. Just looking to history, I know South Carolina you have in your corner. Do you have any other antebellum cases from the states? So we have the Louisiana-Hudson decision, which I think even Petitioner agrees is in our camp. I think Petitioner agrees all these are in our camp. I know you have some later decisions. Well, that's it. I think Hudson is... I think it's in the 1850s. Could be wrong about that. We have an Alabama decision that's, I think, decisions from the early 1900s, but what they recognize... No, no, no. If we're interpreting the original meaning of the Sixth Amendment, I would have thought closer in time contemporaneous evidence would be better. Would you agree with that? I think that's right, but I think what the Alabama case is... So South Carolina is your best one, I think. That's right. I think... And they've admitted that they're an outlier. What do we do about that? So I guess a couple of points. First, I think it is true that the four states that I think were on the other side of this, whether judges or juries had to make these recidivism findings, they were an outlier as to the default common law rule in this context. I concede that the majority of states had a default common law rule that these recidivism findings or these recidivism facts had to be in an indictment and proved to a jury beyond a reasonable doubt. So I think South Carolina, Alabama, Louisiana, Kansas, they were outliers with respect to that tradition, but what I don't think they were... Some of them weren't even members of the original states that formed the compact that led to the Sixth Amendment. That's true, Your Honor, but I think that... And that's your second point, but the later cases, Alabama, Kansas, although they come later, they recognize that there had been a settled tradition in those states, and I think Petitioner and the government have shown nothing to contradict that, so I think that is a fair assumption. And I do think that... So the fact that there's this different common law tradition in the majority of states, I don't think that's enough to establish that this was a fundamental principle that was incorporated into the Constitution because we have these states within that majority, Virginia, Massachusetts, Maine. These are significant states that were a part of the initial compact and that allowed legislatures to deviate from the common law rule, and then when those supplemental information statutes were challenged in court on constitutional grounds, courts rejected those challenges all the way through this court's decision in 1910, endorsing the Massachusetts Ross decision from 1824. So I think there's just a uniform string of precedents saying this majority common law rule that recidivism has to be in the indictment and proved to a jury, it's something the legislature can alter. Can I ask you about bifurcation? Do you think bifurcation is completely in the discretion of the trial judge? I think it's in the discretion of the trial judge. If you lose here and... That's right. I think in the federal system, it is under Rule 14. I think it's subject to the discretion of the trial judge, subject to abuse of discretion and review. Would there be any constitutional overlay on that? In other words, it was impermissible to deny bifurcation under these circumstances? I don't think so. I think the court has refused to require bifurcation as a constitutional matter, and I don't think the court should do so in this case, and I also don't think the court should sort of place a thumb on the scale, even if the court decides, the petitioner and the government here, say that bifurcation should ordinarily be required in these cases, because I do think there is something to the idea that the government really does have, I think, a right to present to a single jury all of its evidence on all of the elements of the crime, and if you rule for petitioner and the government here, I think what you are saying is that this occasions fact is sort of an element of the crime. And then on bifurcation, the other problem which I mentioned earlier is that states have varying procedures on bifurcation, and so some of them make it discretionary. I think so. It's going to have... It's hard to say exactly how this is going to play out in the states. That's true with respect to Old Chief, too? Correct. I think Old Chief... I think Old Chief doesn't really solve the prejudice problem, because as you see from the Herald case we cite, that case involved an Old Chief stipulation, so that bifurcation was denied, the defendant was then forced to stipulate,  and that stipulation has to be read to the jury, and that jury has to be told this is a three-time convicted felon. That's a big difference from being told this is a one-time convicted felon. Justice Alito asked questions of your friends on the other side, and Justice Jackson, too, about what kind of proof would be used to prove this up to a jury. Do you have anything to say about that? So I think if it's going before a jury, subject to the rules of evidence, which admittedly I'm not an expert on, I think anything that's admissible and relevant, I would think would be able to be used to prove this question to a jury. But it would make it harder, since they don't apply to a judge, and a judge has to find these things by a preponderance, if you're right? I think that it probably... I'm sure the standard would make it harder for them to prove these issues. Again, I don't think... I agree with the government that I don't think this is going to matter in all that many cases, because I think most of these cases are going to be pretty clear that these crimes were on separate occasions. This case, for example, I think it's clear beyond a doubt, as the government said, that these crimes occurred multiple days apart, they were on separate occasions, and I think most juries... I guess the one point I would make is there is a potential nullification risk, I think, in some of these cases, because of the severe mandatory minimums at issue. And I think the petitioner cited one case in his surpetition, where a Georgia jury refused to find different occasions despite the convictions being... or the offenses being months and years apart. So I do think that might happen in some cases, but for the most part, I think these are going to be pretty straightforward. Thank you, Counselor. Justice Thomas, anything further? There is a lot of debate on whether, historically, jury nullification was an okay thing. That's right. I don't want to wade into that debate. I'm not suggesting we do, but it is an open question. Anything further? Thank you, Counsel. The bottle, Mr. Fisher? Thank you. I'd like to cover two topics. First, a couple more words about bifurcation. There was some talk about state practices. Even in 1967, when the court looked at this issue in Spencer, it noted that the majority of the states require bifurcation by statute. It's not even a prosecutorial discretionary decision, and I think that trend has continued for all the common-sense reasons laid out in the briefs you have. So, Justice Kavanaugh, it's not even a constitutional question, necessarily. It's just already been decided by the states. If you had... You know, this is a federal case where you have your own supervisory powers, and you can, I think, you know, make whatever suggestions you like in the opinion, and we think it would be appropriate for the court to say that bifurcation is the accepted solution here that seems to be the right one. I'd also like to say a couple words about the harmless error conversation that's taken place today. We haven't briefed that issue precisely because the court's common practice and overwhelming practice is to leave decisions, leave questions like that that were not addressed by the lower courts for the lower courts to decide in the first instance, and that's what we'd ask for the court to do here. And forgive me. I may have even misunderstood the way the amicus appointment works in this case. You know, of course, we are not in line with the government on harmless error in this case, but the government's topside brief said the case should be remanded for harmless error, and so on the issue on which we are adverse to the government, I don't know that amicus can come in and tell this court to go ahead and address it, but leaving that perhaps thorny issue of the court's practice aside, in all events, we think the safest thing is to leave that for remand. But I'll just add a couple of things about the factual conversation that took place today. Remember, when you ask whether these crimes, they're alleged to be committed on eight days, you know, on an eight-day stretch, three different crimes on an eight-day stretch could possibly be the same occasion, you are yourselves relying on these kinds of documents that you have noted in Mathis and Diskamps are highly unreliable. And, in fact, these documents themselves, the plea documents themselves here, say that Mr. Ehrlinger agrees to cooperate against all of his co-defendants. There were no co-defendants in these cases. And so, Justice Axson, you noted that an indictment might say on or about certain days. And when you get into an eight-day stretch, on or about matters quite a lot. So what we would say on remand, in part, and this goes to Justice Gorsuch's questions about how harmless error would work here, is that the government may not have been able to prove beyond a reasonable doubt to a jury that these crimes were committed on separate occasions, and that's enough to allow a retrial or just at least renegotiations on that point. If the Court has no further questions, I'll submit. Thank you, Counsel. Mr. Harper, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.